**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SONGWRITERS OF NORTH AMERICA, *et al.* | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | Civil Action No. 16-cv-01830 (TSC) |
| | ) | |
| UNITED STATES DEPARTMENT OF JUSTICE, *et al.* | ) | |
| | ) | |
| Defendants | ) | |

**<u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM</u>**

# <u>CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ................................................................................................................... 3

    I.     The ASCAP and BMI consent decrees ................................................................. 3

    II.    The August 2016 Statement ................................................................................ 4

    III.   The plaintiffs' complaint .................................................................................... 6

    IV.   Recent proceedings before the District Court for the Southern District of New York ................................................................................................................... 6

ARGUMENT ........................................................................................................................ 7

    V.    The complaint should be dismissed for lack of subject matter jurisdiction because the plaintiffs cannot establish standing and because the interpretation of the consent decrees is a matter best left to the court that issued them .......................... 7

        A.    Standards governing a motion to dismiss for lack of subject matter jurisdiction ................................................................................................ 7

        B.    The plaintiffs cannot establish standing because they have not suffered any direct injury that can be traced to the Statement or can be redressed by a favorable ruling. ................................................................................... 8

        C.    The plaintiffs also cannot establish the jurisdictional requirement of ripeness. ............................................................................................. 10

        D.    This Court should leave the interpretation of the consent decrees to the issuing court, the District Court for the Southern District of New York. . 11

    VI.   The complaint does not state a claim under either the Constitution or the Administrative Procedure Act. ........................................................................... 13

        A.    Standards governing a motion to dismiss for failure to state a claim ....... 13

        B.    The complaint does not state a claim for any violation of constitutional rights. ............................................................................................... 13

            1.    The plaintiffs do not state a viable claim for violation of procedural due process rights because they have not alleged that they have been deprived of a property or liberty interest. ............................. 13

2.      The plaintiffs do not state an actionable claim for violation of substantive due process rights...................................................... 14

3.      The plaintiffs do not state a claim under the Takings Clause. ...... 15

C.      The complaint does not state a viable claim under the Administrative Procedure Act because the Department of Justice's interpretation of the consent decree is not reviewable under the APA. .................................... 16

1.      The Statement has no legal effect of its own and therefore is not final agency action reviewable under the APA. ........................... 16

2.      The Statement is not reviewable under the APA because the plaintiffs can pursue adequate alternative remedies in the District Court for the Southern District of New York.............................. 18

3.      The adoption of litigation positions by the Department of Justice is not reviewable under the APA because it is committed to agency discretion by law. ....................................................................... 19

CONCLUSION................................................................................................................. 20

# <u>TABLE OF AUTHORITIES</u>

**CASES**

*Al-Ansi v. Obama*,
    647 F. Supp. 2d 1 (D.D.C. 2009) .......................................................................... 12

*Allen v. Wright*,
    468 U.S. 737 (1984)............................................................................................. 8

\* *AT&T Co. v. EEOC*,
    270 F.3d 973 (D.C. Cir. 2001) ............................................................................17

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................................ 13

\* *Bennett v. Spear*,
    520 U.S. 154 (1997) ...........................................................................................17

*Broad. Music, Inc. v. Columbia Broad. Sys., Inc.*,
    441 U.S. 1 (1979)................................................................................................ 3

*Chlorine Inst., Inc. v. Fed. R.R. Admin.*,
    718 F.3d 922 (D.C. Cir. 2013) ............................................................................ 11

*Collins v. City of Harker Heights*,
    503 U.S. 115 (1992)............................................................................................ 15

*Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*,
    452 F.3d 798 (D.C. Cir. 2006) ............................................................................ 17

*Devia v. Nuclear Regulatory Comm'n*,
    492 F.3d 421 (D.C. Cir. 2007) ............................................................................ 11

*EEOC v. St. Francis Xavier Parochial Sch.*,
    117 F.3d 621 (D.C. Cir. 1997)........................................................................ 7, 13

*Energy Transp. Grp., Inc. v. Skinner*,
    752 F. Supp. 1 (D.D.C. 1990) ............................................................................ 20

\* *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) ........................................................................................8, 9

\* *Gen. Elec. Co. v. Jackson*,
    610 F.3d 110 (D.C. Cir. 2010) ............................................................................14

*Heckler v. Chaney*,
　　470 U.S. 821 (1985) .................................................................... 19

*Herbert v. Nat'l Acad. of Scis.*,
　　974 F.2d 192 (D.C. Cir. 1992) ...................................................... 7

*Hunt v. Wash. State Apple Adver. Comm'n*,
　　432 U.S. 333 (1977) .................................................................... 10

\* *Indep. Equip. Dealers Ass'n v. EPA*,
　　372 F.3d 420 (D.C. Cir. 2004) ..............................................16, 17

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
　　511 U.S. 375 (1994) ...................................................................... 7

*Kowal v. MCI Commc'ns Corp.*,
　　16 F.3d 1271 (D.C. Cir. 1994) .................................................... 13

*Lujan v. Defs. of Wildlife*,
　　504 U.S. 555 (1992) ...................................................................... 9

*Mann Mfg., Inc. v. Hortex, Inc.*,
　　439 F.2d 403 (5th Cir. 1971) ...................................................... 12

\* *Martin-Trigona v. United States*,
　　779 F.2d 72 (D.C. Cir. 1985) (per curiam) ..............................11, 12

*Minn. State Bd. for Cmty. Colls. v. Knight*,
　　465 U.S. 271 (1984) .................................................................... 14

\* *NAACP v. Meese*,
　　615 F. Supp. 200 (D.D.C. 1985) ..............................................18, 20

*Nat'l Mining Ass'n v. Kempthorne*,
　　512 F.3d 702 (D.C. Cir. 2008) .................................................... 15

\* *Nat'l Park Hospitality Ass'n v. Dep't of the Interior*,
　　538 U.S. 803 (2003) .....................................................................11

*Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*,
　　366 F.3d 930 (D.C. Cir. 2004) .................................................... 18

*Pigford v. Veneman*,
　　292 F.3d 918 (D.C. Cir. 2002) .................................................... 12

*Preseault v. ICC*,
    494 U.S. 1 (1990)..................................................................................... 15

*Price v. Socialist People's Libyan Arab Jamahiriya*,
    294 F.3d 82 (D.C. Cir. 2002) .................................................................... 7

*Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*,
    324 F.3d 726 (D.C. Cir. 2003) .................................................................. 18

*Reno v. Flores*,
    507 U.S. 292 (1993)................................................................................. 15

* *Shoshone-Bannock Tribes v. Reno*,
    56 F.3d 1476 (D.C. Cir. 1995) .................................................................19

*Sierra Club v. Morton*,
    405 U.S. 727 (1971) ................................................................................ 10

*Simon v. E. Ky. Welfare Rights Org.*,
    426 U.S. 26 (1976)................................................................................... 10

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009)................................................................................. 10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)............................................................................. 7, 13

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
    136 S. Ct. 1807 (2016)......................................................................... 16, 18

*Washington v. Glucksberg*,
    521 U.S. 702 (1997)................................................................................. 15

## CONSTITUTIONAL PROVISIONS

Due Process Clause, U.S. Const. amend. V....................................................... 14

Takings Clause, U.S. Const. amend. V ............................................................. 15

U.S. Const. art. III ............................................................................................ 8

## FEDERAL STATUTES

28 U.S.C. § 519................................................................................................ 19

Administrative Procedure Act, 5 U.S.C. §§ 551–559, 701–706................................ passim

Sherman Act, 15 U.S.C. § 1 ................................................................................................. 3

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 13

Fed. R. Civ. P. 24(b)(1) ................................................................................................. 19

**OTHER AUTHORITIES**

Dep't of Justice, Statement of the Department of Justice on the Closing of the Antitrust
   Division's Review of the ASCAP and BMI Consent Decrees (Aug. 4, 2016)
   ........................................................................................................... passim

## PRELIMINARY STATEMENT

As pertains to this litigation, songwriters and music publishers can join "performing rights organizations" in order for these organizations to license their work to users of music on a large scale and to collect their royalties. The two largest performing rights organizations, the American Society of Composers, Authors and Publishers (ASCAP) and Broadcast Music, Inc. (BMI), are each subject to consent decrees entered in the District Court for the Southern District of New York to resolve antitrust lawsuits brought by the United States in 1941.[1]

The plaintiffs in this action seek to challenge a statement issued by the Department of Justice in August 2016 in which the Department expressed its view that the consent decrees prohibit ASCAP and BMI from offering "fractional" licenses that do not provide licensees with full permission to perform the licensed works. Dep't of Justice, Statement of the Department of Justice on the Closing of the Antitrust Division's Review of the ASCAP and BMI Consent Decrees (Aug. 4, 2016) [*hereinafter* Statement], https://www.justice.gov/atr/file/882101 /download. The Statement carries no force of its own; it merely states the Department's view of what is required under the consent decrees. The interpretation and enforcement of the consent decrees is ultimately controlled by the District Court for the Southern District of New York.

The Statement consists of nothing more than the litigation positions the Department of Justice is taking in the *ASCAP* and *BMI* cases before the Southern District of New York. There is no basis for a standalone lawsuit challenging an agency's litigation position in another case, and

---

[1] *United States v. Am. Soc'y of Composers, Authors & Publishers (ASCAP)*, Civ. Action No. 41-1395 (WCC) (S.D.N.Y. June 11, 2001) (second amended final judgment); *United States v. Broad. Music, Inc.*, 64 Civ. 3787 (S.D.N.Y. Nov. 18, 1994) (order modifying 1966 consent decree).

the plaintiffs' claims should be dismissed. The plaintiffs cannot meet the jurisdictional

requirements of standing and ripeness because they do not allege any injury they have suffered or

will suffer because of the Statement. The Statement only lays out what the Department believes

is required under the consent decrees; it does not change the terms of the consent decrees or have

any effect separate from the consent decrees. Any harm that might flow to the plaintiffs in

connection with application of the consent decrees would be a product of the consent decrees

themselves, not the challenged Statement.

Even if the Court had jurisdiction, the Court should abstain from exercising jurisdiction

because the plaintiffs are essentially asking the Court to determine the meaning of the ASCAP

and BMI consent decrees. The interpretation of those decrees is a matter for the court where they

were entered, the District Court for the Southern District of New York. This Court should not

interfere with that other court's authority over its cases.

The plaintiffs' complaint also fails to state a claim on which relief can be granted. The

Statement does not violate the plaintiffs' constitutional right to procedural due process because it

does not deprive the plaintiffs of any property or liberty interest. The plaintiffs also do not

present any plausible claim for a violation of substantive due process rights or an

unconstitutional taking of property.

The Statement also is not subject to judicial review under the Administrative Procedure

Act, 5 U.S.C. §§ 551–559, 701–706, for at least three reasons. Because the Statement has no

direct legal effect, it does not qualify as "final agency action" reviewable under the APA.

Moreover, APA review is unavailable when a plaintiff has other adequate remedies, and in this

case, the plaintiffs could advance their interests by seeking to intervene in the New York cases in

which the consent decrees were entered. In addition, the APA does not permit review of matters

that are "committed to agency discretion by law," and that includes decisions made by the Department of Justice about the litigation positions it will assert on behalf of the United States in the *ASCAP* and *BMI* cases.

Because the plaintiffs cannot establish subject matter jurisdiction and because the allegations of the complaint fail to state a claim on which relief can be granted, the Court should dismiss this action.

**BACKGROUND**

**I.      The ASCAP and BMI consent decrees**

Songwriters and music publishers can choose to join performing rights organizations that license their members' work on a large scale. A performing rights organization offers a "blanket license" that permits a music user—such as a bar owner, television or radio station, or Internet music distributor—to perform the works of all of the members of the performing rights organization. Blanket licensing by performing rights organizations permits music users to immediately obtain access to large catalogs of work without cumbersome individual negotiations with music creators. But while blanket licensing offers efficiency benefits, it also risks lessening competition and raises antitrust concerns. *See generally Broad. Music, Inc. v. Columbia Broad. Sys., Inc.*, 441 U.S. 1, 4–5, 19–23 (1979).

The two largest performing rights organizations, the American Society of Composers, Authors and Publishers (ASCAP) and Broadcast Music, Inc. (BMI), are subject to consent decrees entered in the District Court for the Southern District of New York. These consent decrees resolved lawsuits brought by the United States in 1941 in which the United States had alleged that ASCAP and BMI had violated Section 1 of the Sherman Act, 15 U.S.C. § 1.

3

II.      **The August 2016 Statement**

In 2014, at the request of ASCAP and BMI, the Antitrust Division of the U.S. Department of Justice opened an inquiry into the operation and effectiveness of the consent decrees. *See* Statement at 2. The Division solicited two rounds of public comments regarding the consent decrees and met with dozens of industry stakeholders. *See id.* The Division detailed its conclusions in a statement posted on the Department of Justice Web site. Dep't of Justice, Statement of the Department of Justice on the Closing of the Antitrust Division's Review of the ASCAP and BMI Consent Decrees (Aug. 4, 2016).

One of the issues the Division examined was whether changed conditions in the music market warranted any modification of the consent decrees. *See id.* at 2–3. As part of this examination, the Division analyzed whether the consent decrees, as currently written, permit ASCAP and BMI to provide "fractional" licenses in situations where they do not hold sufficient rights to provide a full license to a work. *See id.* at 3.

The fractional-licensing issue can arise in situations where a work has more than one author and the authors have established arrangements restricting the ability of each author to independently grant a license to use the work. Under U.S. copyright law, joint owners of a work are ordinarily treated as tenants in common, which means that any of the joint owners may license use of the work without approval from the other joint owners, though the other joint owners will become entitled to shares of the proceeds. *See id.* at 8. However, joint owners can choose to depart from this default rule and can enter agreements that restrict joint owners from independently licensing use of a work. *See id.* Thus, if a work is written by two coauthors, only one of them is a member of a performing rights organization, and an agreement between the coauthors restricts each coauthor from independently licensing use of the work, the performing

4

rights organization may not have the ability to grant a full license to use the work. However, the performing rights organization theoretically could grant a partial or "fractional" license with respect to the rights that it does hold. A user who obtained such a fractional license would not be able to perform the work; it would first need to obtain an additional license from the other coauthor (or from a performing rights organization of which the other coauthor is a member). *See id.*

The Department's analysis concluded that the consent decrees do not permit fractional licensing, and the blanket licenses offered by ASCAP and BMI must provide "full work" licenses to all of the songs in the pertinent organization's repertory. *See id.* at 11–13. The Department based its analysis on the text of the consent decrees, the historical practices of ASCAP and BMI, and a conclusion that fractional licensing would severely undercut the efficiency benefits offered by blanket licensing. *See id.* at 11–12. A corollary of the Department's conclusion is that ASCAP and BMI may not include songs in their repertories for which they do not hold sufficient rights to grant full-work licenses. ASCAP and BMI must either exclude such songs from their repertories or obtain necessary licensing authority through arrangements with their members or other performing rights organizations. *See id.* at 12–13.

The Department noted that interpreting the consent decrees to prohibit fractional licensing would not necessarily preclude ASCAP and BMI from licensing works created by collaborators who are members of different professional rights organizations. The Department noted that agreements among cocreators of individual works or reciprocal agreements between professional rights organizations could be established to make blanket licensing possible in such situations. *See id.* at 18–22.

5

The Department determined that it would not seek or support modification of the consent decrees to permit fractional licensing. *See id.* at 13–16. It also stated that it would not seek enforcement of the consent decrees with respect to fractional licensing by ASCAP and BMI for one year. *See id.* at 17–18.

### III.     The plaintiffs' complaint

The plaintiffs in this action are Songwriters of North America (SONA) and three music creators: Michelle Lewis, who is the Executive Director of SONA and a songwriter and composer; Thomas Kelly, who is a songwriter and musician; and Pamela Sheyne, who is a songwriter and composer. Compl. for Declaratory and Injunctive Relief ¶¶ 19–22, ECF No. 1. The plaintiffs' Complaint, filed September 13, 2016, asserts that the Department's Statement regarding fractional licensing violates the Constitution and the Administrative Procedure Act. Compl. ¶¶ 59–70. The complaint seeks declaratory and injunctive relief against the Department of Justice, the Attorney General, and the Acting Assistant Attorney General of the Antitrust Division. Compl. at 18.

None of the plaintiffs in the suit are parties in the *ASCAP* or *BMI* lawsuits in the Southern District of New York, though plaintiff Lewis alleges that she is a member of ASCAP, Compl. ¶ 20.

### IV.     Recent proceedings before the District Court for the Southern District of New York

In response to the Department's Statement, BMI filed a letter in the *BMI* case contesting the Department's interpretation of the consent decree with respect to the fractional licensing issue. BMI indicated that it intended to file a motion requesting that the court either rule that the consent decree permits fractional licensing, modify the consent decree to allow fractional licensing, or allow BMI additional time to comply with the prohibition of fractional licensing.

6

Letter from Scott A. Edelman to Hon. Louis L. Stanton, *United States v. Broad. Music, Inc.*, No.
64 Civ. 3787 (S.D.N.Y. Aug. 4, 2016), ECF No. 87.

The court held a premotion conference on September 16, 2016, and, after the conference,
issued a ruling stating that the BMI consent decree does not prohibit fractional licensing. *United
States v. Broad. Music, Inc.*, No. 64 Civ. 3787 (LLS) (S.D.N.Y. Sept. 16, 2016), ECF No. 100.
The Department disagrees with the ruling and is considering whether to appeal. The Department
filed a notice of appeal on November 11, 2016. Notice of Appeal, *United States v. Broad. Music,
Inc.*, Case No. 64 Civ. 3787 (LLS) (S.D.N.Y. Nov. 11, 2016), ECF No. 103.

## ARGUMENT

**V.     The complaint should be dismissed for lack of subject matter jurisdiction because
the plaintiffs cannot establish standing and because the interpretation of the consent
decrees is a matter best left to the court that issued them.**

### A.     Standards governing a motion to dismiss for lack of subject matter jurisdiction

The party that seeks to invoke federal court jurisdiction—in this case, the plaintiffs—
bears the burden of establishing jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511
U.S. 375, 377 (1994). When a defendant asserts that the allegations in the plaintiff's complaint
are legally insufficient to invoke the court's jurisdiction, the court considers the same materials
that it would consider on a motion to dismiss for failure to state a claim. *See Price v. Socialist
People's Libyan Arab Jamahiriya*, 294 F.3d 82, 93 (D.C. Cir. 2002); *Herbert v. Nat'l Acad. of
Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992). This means that the Court may consider "the facts
alleged in the complaint, any documents either attached to or incorporated in the complaint and
matters of which [the Court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial
Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308, 322 (2007).

**B.      The plaintiffs cannot establish standing because they have not suffered any direct injury that can be traced to the Statement or can be redressed by a favorable ruling.**

Article III of the Constitution restricts the subject matter jurisdiction of the federal courts to specific "'cases' and 'controversies'" and prevents courts from taking action in matters better suited to legislative or executive action. *Allen v. Wright*, 468 U.S. 737, 750 (1984). One aspect of the "case or controversy" limitation is the requirement of "standing," which requires the plaintiff to establish three elements:

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000).

The plaintiffs in this case cannot establish any of these three requirements. In regard to their alleged injury in fact, the plaintiffs contend that if fractional licensing is prohibited, it could become more difficult for music creators to control the licensing of their work and collect payment for use of their works. But the complaint does not draw any convincing link between that alleged harm and the Statement issued by the Department of Justice that is the target of their challenge. At best, the Complaint merely describes conjectural harm that potentially could occur depending on how ASCAP and BMI adapt to the prohibition of fractional licensing under the consent decrees. For example, the plaintiffs allege that *if* plaintiff Sheyne decides to join another performing rights organization, SESAC, "SESAC *may* not be able to collect for Sheyne's shares" of licensing fees collected by ASCAP and BMI for works that Sheyne authored in collaboration with ASCAP and BMI members." Compl. ¶ 57 (emphasis added). But the plaintiffs offer no reason to believe prohibition of fractional licensing would necessarily lead ASCAP and BMI to

8

deny payments to Sheyne or SESAC. Harm that is not actual or imminent but merely conceivable or possible is not enough. *See Friends of the Earth, Inc.*, 528 U.S. at 180.

Plaintiffs also cannot satisfy the second prong of standing, which requires them to show that any injury is "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)) (omissions in original) (alterations in original). The Supreme Court has explained that when a plaintiff's claim of injury relies on assumptions about how third parties will react to Government action, "much more is needed. . . . [I]t becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury." *Id.* at 562. The plaintiffs in this case are not directly regulated by the ASCAP and BMI consent decrees, and they have not provided a plausible account of why ASCAP and BMI or other industry actors will necessarily react to the Department's interpretation of the consent decrees in a way that causes harm to the plaintiffs. Moreover, plaintiffs' ability to trace their alleged injury to defendants is doubly undermined by the fact that the Department of Justice Statement that is the focus of the plaintiffs' challenge does not have any legal effect of its own. The Statement merely lays out the Department's view of what is required by the ASCAP and BMI consent decrees. Any harm the plaintiffs might suffer because of the consent decrees would be a product of the consent decrees, not the Department of Justice Statement.

For these same reasons, the plaintiffs cannot demonstrate that the potential harm they describe is likely to be redressed by a favorable decision, as required under the third prong of

standing. If the Court were to grant relief against the Department of Justice Statement, that would not change what the consent decrees themselves demand of ASCAP and BMI.

The participation of the Songwriters of North America does not provide any additional basis for standing. An advocacy organization's interest in the subject matter of a case is not enough to establish standing. *See Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 (1976) ("Our decisions make clear that an organization's abstract concern with a subject that could be affected by an adjudication does not substitute for the concrete injury required by Art. III."); *Sierra Club v. Morton*, 405 U.S. 727, 739 (1971) ("[A] mere 'interest in a problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself to render the organization 'adversely affected' or 'aggrieved' within the meaning of the APA."). In some circumstances, a membership organization may sue on behalf of its members, but only if the organization can identify at least one member who would have standing to sue in his or her own right. *See Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977) (noting that a membership organization suing on behalf of its members must show that "its members would otherwise have standing to sue in their own right"); *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009) (noting that prior cases "have required plaintiff-organizations to make specific allegations establishing that at least one identified member had suffered or would suffer harm"). SONA has not shown how any individual member of SONA has been harmed by the Statement in a way that would support standing.

### C.      The plaintiffs also cannot establish the jurisdictional requirement of ripeness.

For similar reasons, the plaintiffs cannot establish the jurisdictional requirement of ripeness. "Ripeness is a justiciability doctrine designed to prevent the courts, through avoidance

of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Nat'l Park Hospitality Ass'n v. Dep't of the Interior*, 538 U.S. 803, 807–08 (2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967)). Ripeness depends on "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Id.* at 808. As discussed above, any injury the plaintiffs might suffer would be contingent on the independent actions of third parties such as ASCAP, BMI, and the District Court for the Southern District of New York. The plaintiffs may never be injured, and if they were ever injured, their injury would be several steps removed from the challenged Department of Justice Statement. "[A] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Devia v. Nuclear Regulatory Comm'n*, 492 F.3d 421, 425 (D.C. Cir. 2007) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)); *Chlorine Inst., Inc. v. Fed. R.R. Admin.*, 718 F.3d 922, 927 (D.C. Cir. 2013) (noting that a plaintiff that does not face an "imminent or certainly impending injury" cannot establish either standing or ripeness).

**D.      This Court should leave the interpretation of the consent decrees to the issuing court, the District Court for the Southern District of New York.**

A further reason the Court should dismiss this case is that the plaintiffs are essentially asking this Court to determine what the consent decrees issued by the Southern District of New York do and do not require of ASCAP and BMI. The proper interpretation of the consent decrees is a matter for the issuing court, the District Court for the Southern District of New York.

A federal court generally should decline to interfere with another court's administration of an order issued by that other court. For example, in *Martin-Trigona v. United States*, 779 F.2d

72 (D.C. Cir. 1985) (per curiam), the D.C. Circuit refused to consider whether a litigant should be excused from complying with an injunction issued by the District Court for the District of Connecticut. The D.C. Circuit stated that "[a]lthough technically in this instance this court may have the power to excuse compliance with the Connecticut injunction in light of changed circumstances, considerations of comity, consistency of treatment, and orderly administration of justice convince us that such an argument should have been directed to the District Court in Connecticut." *Id.* at 73; *see also Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971) ("When a court is confronted with an action that would involve it in a serious interference with or usurpation of [another court's power to supervise an injunction], 'considerations of comity and orderly administration of justice demand that the nonrendering court should decline jurisdiction * * * and remand the parties for their relief to the rendering court, so long as it is apparent that a remedy is available there.'") (omission in original) (quoting *Lapin v. Shulton, Inc.*, 333 F.2d 169, 172 (9th Cir. 1964)), *quoted in Doe v. Doe Agency*, 608 F. Supp. 2d 68, 71 (D.D.C. 2009); *NAACP v. Meese*, 615 F. Supp. 200, 205 (D.D.C. 1985); *Common Cause v. Jud. Ethics Comm.*, 473 F. Supp. 1251, 1253 (D.D.C. 1979); *Al-Ansi v. Obama*, 647 F. Supp. 2d 1, 13 (D.D.C.) ("It would be inappropriate for this Court to issue any order which could affect or interfere with another judge's handling of a case on his or her docket."), *reconsideration granted in part on other grounds*, 671 F. Supp. 2d 139 (D.D.C. 2009).

The District Court for the Southern District of New York, as the court where the ASCAP and BMI consent decrees were entered, retains authority over enforcement and interpretation of the consent decrees. *See Pigford v. Veneman*, 292 F.3d 918, 923 (D.C. Cir. 2002). This Court should decline to step in front of that other court in deciding how the consent decrees should be interpreted.

12

**VI.    The complaint does not state a claim under either the Constitution or the Administrative Procedure Act.**

**A.    Standards governing a motion to dismiss for failure to state a claim**

To withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (footnote omitted) (citations omitted); *see also Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) ("[T]he court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations."). The rules of pleading require factual allegations "plausibly suggesting," and "not merely consistent with," the elements of a valid claim for relief. *Bell Atl. Corp.*, 550 U.S. at 557. In evaluating the sufficiency of the complaint, a court considers "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

**B.    The complaint does not state a claim for any violation of constitutional rights.**

1.    The plaintiffs do not state a viable claim for violation of procedural due process rights because they have not alleged that they have been deprived of a property or liberty interest.

The plaintiffs do not state a viable claim under the Fifth Amendment guarantee of procedural due process because they have not been deprived of any protected property or liberty

interest. "The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in liberty or property. Only after finding the deprivation of a protected interest do we look to see if the [government's] procedures comport with due process." *Gen. Elec. Co. v. Jackson*, 610 F.3d 110, 117 (D.C. Cir. 2010) (alteration in original) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999)).

The plaintiffs in this case rely specifically on alleged effects on their copyright and contractual rights. Compl. ¶ 61. Rights of this kind can qualify as property interests for purposes of the Due Process Clause, but the plaintiffs do not allege that they have been *deprived* of any copyright or contractual rights. They merely contend that the Department of Justice's Statement "diminishes and encumbers" their rights. Compl. ¶ 61. Government action that merely has some indirect effect on the value of a property interest, or imposes obstacles to the exercise of property rights, does not qualify as "deprivation" of a property interest under the Due Process Clause. *See Gen. Elec. Co.*, 610 F.3d at 121–22.

Because plaintiffs do not allege that they have been deprived of any property or liberty interest, they cannot make out a claim under the Due Process Clause. The Due Process Clause does not constrain everyday policymaking action by the Government when it does not deprive any individual of a property or liberty interest. *See Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 283–84 (1984) ("The Constitution does not grant to members of the public generally a right to be heard by public bodies making decisions of policy.").

2.    The plaintiffs do not state an actionable claim for violation of substantive due process rights.

The Supreme Court has established that the Fifth Amendment guarantee of due process includes "a substantive component, which forbids the government to infringe certain fundamental liberty interests at all, no matter what process is provided, unless the infringement is

14

narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 301–02

(1993). But the Court has "always been reluctant to expand the concept of substantive due

process because guideposts for responsible decisionmaking in this unchartered area are scarce

and open-ended," *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). The Court has

observed that the protections of substantive due process are limited to fundamental rights and

liberties "deeply rooted in this Nation's history and tradition and implicit in the concept of

ordered liberty," *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (citations omitted), and

it has held that "[s]ubstantive due process analysis must begin with a careful description of the

asserted right." *Flores*, 507 U.S. at 302; *see also Glucksberg*, 521 U.S. at 721.

The plaintiffs in this case have not described the fundamental right they seek to rely on,

nor have they articulated how the Statement could be viewed as impairing any such right. Merely

reciting the words "substantive due process" is not enough to establish a claim under the Fifth

Amendment.

        3.        The plaintiffs do not state a claim under the Takings Clause.

The plaintiffs also allege fleetingly that, through the Statement, the Government is

"taking their property without compensation." Compl. ¶ 62. It is not clear whether the plaintiffs

mean to suggest that the Statement violates the Takings Clause of the Fifth Amendment, but, if

so, they do not state a valid claim. First, as a threshold matter, no property has been taken from

the plaintiffs, which by itself dooms their claim. In addition, "taking claims against the Federal

Government are premature until the property owner has availed itself of the process provided by

the Tucker Act," which plaintiffs have failed to do. *Preseault v. ICC*, 494 U.S. 1, 11 (1990)

(quoting *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S.

172, 195 (1985)); *see also Nat'l Mining Ass'n v. Kempthorne*, 512 F.3d 702, 711 (D.C. Cir. 2008)

("A taking . . . is only unconstitutional if the government fails to pay just compensation, and the Tucker Act provides for such a remedy."). For each of these reasons, plaintiffs cannot state a viable takings claim.

>    **C.    The complaint does not state a viable claim under the Administrative Procedure Act because the Department of Justice's interpretation of the consent decree is not reviewable under the APA.**

>    1.    The Statement has no legal effect of its own and therefore is not final agency action reviewable under the APA.

Fatal to plaintiffs' APA claim is the fact that the Department of Justice Statement does not have any legal effect of its own, but merely sets forth the Department's view of what is required by the ASCAP and BMI consent decrees. Because the Statement does not have any independent legal effect, it does not qualify as "final agency action" under § 704 of the Administrative Procedure Act and therefore is not reviewable under the APA.

The APA limits judicial review to "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704; *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 136 S. Ct. 1807, 1813 (2016). The Statement challenged by the plaintiffs does not qualify as "agency action" under the APA. The APA defines agency action as an "agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). The Statement has no legal force of its own and does not have the character of a rule, order, or similar exercise of agency authority. *See Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 428 (D.C. Cir. 2004) (finding that a letter issued by the EPA restating an earlier interpretation of a regulation did not qualify as "agency action" because it had no independent legal effect and instead "left the world just as it found it").

Moreover, even if the Statement could be characterized as "agency action," it still would not qualify as "final" agency action under § 704 of the APA. In *Bennett v. Spear*, 520 U.S. 154 (1997), the Supreme Court explained that:

> two conditions must be satisfied for agency action to be "final": First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.

*Id.* at 177–78 (citations omitted). The Statement does not determine any rights or obligations, and no legal consequences flow from it. Rather, the Statement merely states the Department's interpretation of the rights, obligations, and legal consequences that are imposed by the ASCAP and BMI consent decrees. The interpretation and enforcement of those consent decrees is ultimately up to the District Court for the Southern District of New York.

This case is similar to *AT&T Co. v. EEOC*, 270 F.3d 973 (D.C. Cir. 2001), where the D.C. Circuit held that letters stating the EEOC's views about the application of antidiscrimination laws were not reviewable final agency action. The court held that there is no final agency action when "an agency merely expresses its view of what the law requires of a party, even if that view is adverse to the party." *Id.* at 975. It noted that the EEOC's view of the law had no binding effect and had "force only to the extent the agency can persuade a court to the same conclusion." *Id.* at 976; *see also Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 808 (D.C. Cir. 2006) (finding that letters issued to automakers regarding the application of statutory requirements were not final agency action because they had no binding effect and were "nothing more than a privileged viewpoint in the legal debate"); *Indep. Equip. Dealers Ass'n*, 372 F.3d at 426–28 (finding that agency letters that communicated a legal position but had no binding effect

did not qualify as final agency action); *Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731–35 (D.C. Cir. 2003) (same).

Another very similar case is *NAACP v. Meese*, 615 F. Supp. 200 (D.D.C. 1985). In that case, the NAACP disagreed with the Department of Justice's interpretation of a recent Supreme Court case and asked this Court to block the Department of Justice from seeking or consenting to the reopening of certain civil rights consent decrees based on the disputed interpretation. *See id.* at 201. The Court found that the Attorney General's adoption of the disputed interpretation did not amount to final agency action because it did not "deny rights or create legal obligations or relationships" by itself. *Id.* at 203 & n.7. The Court noted that "[o]nly the courts . . . have the power to take any of these steps, and it is these courts, not the Attorney General, which take final action." *Id.* at 203. Likewise, in this case, the District Court for the Southern District of New York is the only authority that could take binding action affecting any rights, obligations, or legal relationships.

2.     The Statement is not reviewable under the APA because the plaintiffs can pursue adequate alternative remedies in the District Court for the Southern District of New York.

APA review of plaintiffs' claims is furthermore unavailable because the APA limits review to cases in which "there is no other adequate remedy in a court." 5 U.S.C. § 704; *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 136 S. Ct. 1807, 1813 (2016). It does not appear that the plaintiffs have concrete interests directly affected by the interpretation of the consent decrees, but if they did, they could protect those interests by intervening in the *ASCAP* and *BMI* cases in the Southern District of New York. *See NAACP v. Meese*, 615 F. Supp. 200, 203 (D.D.C. 1985) (holding that the plaintiffs had an adequate remedy because they could oppose motions filed by the Government in court); *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 945–

18

48 (D.C. Cir. 2004) (holding that § 704 did not authorize judicial review because the plaintiffs could file separate lawsuits against universities); Fed. R. Civ. P. 24(b)(1) (permissive intervention). Consequently, judicial review is unavailable under § 704.

> 3.    The adoption of litigation positions by the Department of Justice is not reviewable under the APA because it is committed to agency discretion by law.

A further reason why the plaintiffs cannot state a claim under the Administrative Procedure Act is that the formulation of litigation positions—including the litigation positions articulated in the Department of Justice Statement—is committed to the discretion of the Department of Justice.

Judicial review under the APA is barred when "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Agency action is "committed to agency discretion by law" when "no judicially manageable standards are available for judging how and when an agency should exercise its discretion," and a reviewing court consequently would have "no law to apply." *Heckler v. Chaney*, 470 U.S. 821, 830–31 (1985) (quoting *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971)).

The conduct of litigation on behalf of the United States is committed to the Department of Justice. 28 U.S.C. § 519 ("Except as otherwise authorized by law, the Attorney General shall supervise all litigation to which the United States, an agency, or officer thereof is a party . . . ."). The courts may accept or reject the legal positions presented by the Department of Justice, but they generally may not decide what positions the Department of Justice may present. *See Shoshone-Bannock Tribes v. Reno*, 56 F.3d 1476, 1480–81 (D.C. Cir. 1995) ("In both civil and criminal cases, courts have long acknowledged that the Attorney General's authority to control the course of the federal government's litigation is presumptively immune from judicial

19

review."). Accordingly, in *NAACP v. Meese*, this Court found that the Department of Justice's litigation positions were committed to agency discretion by law and therefore were not reviewable under the APA. *See NAACP v. Meese*, 615 F. Supp. 200, 202, 203 n.9; *see also Energy Transp. Grp., Inc. v. Skinner*, 752 F. Supp. 1, 13 (D.D.C. 1990) (rejecting a challenge to Department of Justice litigation decisions because "[t]he relevant law clearly commits the conduct of litigation to the [Department of Justice]'s discretion."), *aff'd on other grounds sub nom. Energy Transp. Grp., Inc. v. Mar. Admin.*, 956 F.2d 1206 (D.C. Cir. 1992).

## CONCLUSION

For the foregoing reasons, defendants respectfully submit that the Court should grant their motion and dismiss this action.

Date: November 18, 2016

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

JOHN R. TYLER
Assistant Branch Director

/s/ JAMES C. LUH
JAMES C. LUH
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave NW
Washington DC 20530
Tel: (202) 514-4938
Fax: (202) 616-8460
E-mail: James.Luh@usdoj.gov
Attorneys for Defendants